1  | LERACH COUGHLIN STOIA GELLER
   |   RUDMAN & ROBBINS LLP
2  | SHAWN A. WILLIAMS (213113)
   | 100 Pine Street, Suite 2600
3  | San Francisco, CA  94111
   | Telephone: 415/288-4545
4  | 415/288-4534 (fax)
   | shawnw@lerachlaw.com
5  |     – and –
   | WILLIAM S. LERACH (68581)
6  | DARREN J. ROBBINS (168593)
   | TRAVIS E. DOWNS III (148274)
7  | 655 West Broadway, Suite 1900
   | San Diego, CA  92101
8  | Telephone: 619/231-1058
   | 619/231-7423 (fax)
9  | billl@lerachlaw.com
   | darrenr@lerachlaw.com
10 | travisd@lerachlaw.com

11 | Attorneys for Plaintiff

FILED

FEB 1 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

HRL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

C 07 0955

JAMES M. LEE, Derivatively on Behalf of
COHERENT, INC.,

          Plaintiff,

   vs.

JOHN R. AMBROSEO, BERNARD J.
COUILLAUD, HELENE SIMONET, LUIS
SPINELLI, VITTORIO FOSSATI-BELLANI,
RONALD A. VICTOR, PAUL L. MEISSNER,
SCOTT H. MILLER, DENNIS C. BUCEK,
CHARLES W. CANTONI, SANDEEP VIJ,
JOHN H. HART, LAWRENCE
TOMLINSON, ROBERT J. QUILLINAN and
GARRY W. ROGERSON,

          Defendants,

   – and –

COHERENT, INC., a Delaware corporation,

          Nominal Defendant.

No.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS AND
STATE LAW CLAIMS FOR BREACH OF
FIDUCIARY DUTY, ABUSE OF
CONTROL, CONSTRUCTIVE FRAUD,
CORPORATE WASTE, UNJUST
ENRICHMENT, GROSS
MISMANAGEMENT, ACTION FOR
ACCOUNTING AND VIOLATION OF
CALIFORNIA CORPORATIONS CODE

DEMAND FOR JURY TRIAL

ORIGINAL

**NATURE OF THE ACTION**

1.      This is a shareholder derivative action brought by a shareholder of Coherent, Inc. ("Coherent" or the "Company") on behalf of the Company against its entire Board of Directors and certain current officers and former top officers and/or directors (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Coherent insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Coherent insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1996.

2.      Between 1996 and 2006, Defendants also caused Coherent to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Coherent carried with them an exercise price that was not less than the fair market value of Coherent stock on the date of grant and issuance.

3.      In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be backdated to dates when the Company's shares were trading at or near the lowest price for that relevant period. By November 2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, contributing to their ability to sell over $23.2 million worth of Coherent stock.

4.      Coherent's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Coherent to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Coherent

1   executives; and (iii) subjected Coherent to potential liability from regulators, including the SEC

2   and the IRS.

3          5.      Defendants' gross mismanagement and malfeasance over the past decade has

4   exposed Coherent and its senior executives to criminal and civil liability for issuing false and

5   misleading financial statements.  Specifically, Defendants caused or allowed Coherent to issue

6   statements that failed to disclose or misstated the following: (i) that the Company had problems

7   with its internal controls that prevented it from issuing accurate financial reports and projections;

8   (ii) that because of improperly recorded stock-based compensation expenses, the Company's

9   financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the

10  Company's public disclosures presented an inflated view of Coherent's earnings and earnings per

11  share.

12         6.      Defendants' malfeasance and mismanagement during the relevant period has

13  wreaked hundreds of millions of dollars of damages on Coherent.  The Company's senior

14  executives were incentivized to over-pay themselves, to profit from their misconduct by cashing

15  in on under-priced stock options and to issue false financial statements to cover up their misdeeds.

16  Defendants' breaches of fiduciary duties in the administration of the Company's stock option

17  plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to

18  the plans.  The Company has now been mentioned as one of several companies likely to have

19  manipulated options.  Meanwhile, certain of the Defendants, who received under-priced stock

20  options and/or knew material non-public information regarding Coherent's internal control

21  problems, abused their fiduciary relationship with the Company by selling over $23.2 million

22  worth of their personally held shares at artificially inflated prices during the relevant period.  This

23  action seeks recovery for Coherent against these faithless fiduciaries, as Coherent's Board of

24  Directors, as currently composed, is simply unable or unwilling to do so.

25                          **INTRADISTRICT ASSIGNMENT**

26         7.      A substantial part of the events or omissions which give rise to the claims in this

27  action occurred in the county of Santa Clara, and as such this action is properly assigned to the

28  San Jose division of this Court.

**JURISDICTION AND VENUE**

8.      The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.  In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

9.      This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1331.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

10.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, as well as 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Coherent is located in and conducts its business in this District.  Further, Defendants conduct business in this District, and certain of the Defendants are citizens of California and reside in this District.

**PARTIES**

12.     Plaintiff James M. Lee is, and at all relevant times was, a shareholder of Coherent.

13.     Nominal party Coherent is a Delaware corporation with its principal executive offices located at 5100 Patrick Henry Drive, Santa Clara, California.  Coherent engages in the design, manufacture, and marketing of lasers, precision optics, and related accessories.  The Company operates through two segments, the Electro-Optics segment and the Lambda Physik segment.

14.     Defendant John R. Ambroseo ("Ambroseo") has served as President, Chief Executive Officer ("CEO") and a director of Coherent since October 2002. Defendant Ambroseo

joined Coherent in August 1988 and served in various managerial positions, including Executive Vice President, President and General Manager of Coherent Laser Group from September 1997 to September 2000, Executive Vice President, President and General Manager of Coherent's Photonics Group from September 2000 to June 2001, and Executive Vice President and Chief Operating Officer ("COO") of Coherent from June 2001 until he was promoted to his current positions. Because of Ambroseo's positions, he knew the adverse non-public information about the business of Coherent, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Ambroseo participated in the issuance of false and misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Ambroseo violated Cal. Corp. Code §§25402 and 25502.5 by selling 58,770 shares of Coherent stock for proceeds of $2.1 million during the relevant period.

15.    Defendant Bernard J. Couillaud ("Couillaud") has served as Chairman of the Board of Coherent since October 2002. Defendant Couillaud joined the Company in November 1983 and served in various managerial positions, including Director of Research and Development of Coherent Laser Group from September 1987 to July 1990, Manager of Coherent's Advanced Systems Business Unit from July 1990 to March 1992, Vice President and General Manager of Coherent Laser Group from March 1992 to July 1996, and President, CEO and a director of the Company from July 1996 until his appointment to his current position. Because of Couillaud's positions, he knew the adverse non-public information about the business of Coherent, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees,

1   attendance at Board meetings and committees thereof and via reports and other information

2   provided to him in connection therewith.  During the relevant period, Couillaud participated in the

3   issuance of false and misleading statements, including the preparation of the false and/or

4   misleading press releases and SEC filings.  Based on his knowledge of material non-public

5   information regarding the Company, defendant Couillaud violated Cal. Corp. Code §§25402 and

6   25502.5 by selling 297,100 shares of Coherent stock for proceeds of $7.4 million during the

7   relevant period.

8        16.    Defendant Helene Simonet ("Simonet") has served as Executive Vice President

9   and Chief Financial Officer ("CFO") of Coherent since April 2002.  Defendant Simonet joined the

10  Company in December 1999 and served as Vice President of Finance of the Company's former

11  Medical Group and Vice President, Finance of the Photonics Division of Coherent until April

12  2002.  Because of Simonet's positions, she knew the adverse non-public information about the

13  business of Coherent, as well as its finances, markets and present and future business prospects,

14  via access to internal corporate documents, conversations and connections with other corporate

15  officers and employees, attendance at management meetings and via reports and other information

16  provided to her in connection therewith.  Defendant Simonet, by her specialized financial

17  expertise, was in a unique position to understand the business of Coherent, as well as its finances,

18  markets and present and future business prospects.  During the relevant period, Simonet

19  participated in the issuance of false and/or misleading statements, including the preparation of the

20  false and/or misleading press releases and SEC filings.  Based on her knowledge of material non-

21  public information regarding the Company, defendant Simonet violated Cal. Corp. Code §§25402

22  and 25502.5 by selling 35,000 Coherent shares for insider trading proceeds of more than $1.2

23  million during the relevant period.

24       17.    Defendant Luis Spinelli ("Spinelli") has served as Executive Vice President and

25  Chief Technology Officer of Coherent since March 2004.  Defendant Spinelli joined the Company

26  in May 1985 and served in various managerial positions, including Vice President for Corporate

27  Research and Chairman of the Company's Technical Advisory Board from October 2002 until his

28  appointment to his current positions in 2004.  Because of Spinelli's positions, he knew the adverse

1 non-public information about the business of Coherent, as well as its finances, markets and

2 present and future business prospects, via access to internal corporate documents, conversations

3 and connections with other corporate officers and employees, attendance at management meetings

4 and via reports and other information provided to him in connection therewith. During the

5 relevant period, Spinelli participated in the issuance of false and/or misleading statements,

6 including the preparation of the false and/or misleading press releases and SEC filings. Based on

7 his knowledge of material non-public information regarding the Company, defendant Spinelli

8 violated Cal. Corp. Code §§25402 and 25502.5 by selling 9,656 Coherent shares for insider

9 trading proceeds of $329,221 during the relevant period.

10   18.  Defendant Vittorio Fossati-Bellani ("Fossati-Bellani") was Executive Vice

11 President and Chief Marketing Officer of Coherent from November 2002 until April 2005.

12 Defendant Fossati-Bellani joined the Company in December 1979 and served in various

13 managerial positions. Because of Fossati-Bellani's positions, he knew the adverse non-public

14 information about the business of Coherent, as well as its finances, markets and present and future

15 business prospects, via access to internal corporate documents, conversations and connections

16 with other corporate officers and employees, attendance at management meetings and via reports

17 and other information provided to him in connection therewith. During the relevant period,

18 Fossati-Bellani participated in the issuance of false and/or misleading statements, including the

19 preparation of the false and/or misleading press releases and SEC filings. Based on his

20 knowledge of material non-public information regarding the Company, defendant Fossati-Bellani

21 violated Cal. Corp. Code §§25402 and 25502.5 by selling 71,810 Coherent shares for insider

22 trading proceeds of $2.6 million during the relevant period.

23   19.  Defendant Ronald A. Victor ("Victor") has served as Executive Vice President,

24 Human Resources of Coherent since May 2000. Previously, Victor served as Vice President,

25 Human Resources from September 1997 to August 1999, and as Corporate Vice President,

26 Human Resources from August 1999 to May 2000. Because of Victor's positions, he knew the

27 adverse non-public information about the business of Coherent, as well as its finances, markets

28 and present and future business prospects, via access to internal corporate documents,

1  conversations and connections with other corporate officers and employees, attendance at

2  management meetings and via reports and other information provided to him in connection

3  therewith.   During the relevant period, Victor participated in the issuance of false and/or

4  misleading statements, including the preparation of the false and/or misleading press releases and

5  SEC filings. Based on his knowledge of material non-public information regarding the Company,

6  defendant Victor violated Cal. Corp. Code §§25402 and 25502.5 by selling 27,000 Coherent

7  shares for insider trading proceeds of $738,890 during the relevant period.

8      20.      Defendant Paul L. Meissner ("Meissner") has been Executive Vice President of

9  Global Business Operations of Coherent since April 2005.   Previously, Meissner served as

10  Executive Vice President and General Manager of Coherent's Laser Systems from July 2004 until

11  his promotion to his current position. Because of Meissner's positions, he knew the adverse non-

12  public information about the business of Coherent, as well as its finances, markets and present and

13  future business prospects, via access to internal corporate documents, conversations and

14  connections with other corporate officers and employees, attendance at management meetings and

15  via reports and other information provided to him in connection therewith.   During the relevant

16  period, Meissner participated in the issuance of false and/or misleading statements, including the

17  preparation of the false and/or misleading press releases and SEC filings.

18      21.      Defendant Scott H. Miller ("Miller") has served as General Counsel of Coherent

19  since October 1988 and as Senior Vice President of the Company since March 1994. Because of

20  Miller's positions, he knew the adverse non-public information about the business of Coherent, as

21  well as its finances, markets and present and future business prospects, via access to internal

22  corporate documents, conversations and connections with other corporate officers and employees,

23  attendance at management meetings and via reports and other information provided to him in

24  connection therewith.   During the relevant period, Miller participated in the issuance of false

25  and/or misleading statements, including the preparation of the false and/or misleading press

26  releases and SEC filings. Based on his knowledge of material non-public information regarding

27  the Company, defendant Miller violated Cal. Corp. Code §§25402 and 25502.5 by selling 55,600

28  shares of Coherent stock for proceeds of more than $2.4 million during the relevant period.

22.    Defendant Dennis C. Bucek ("Bucek") has served as Senior Vice President, Treasurer and Assistant Secretary of Coherent since August 1985. Because of Bucek's positions, he knew the adverse non-public information about the business of Coherent, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the relevant period, Bucek participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

23.    Defendant Charles W. Cantoni ("Cantoni") has been a director of Coherent since 1983. Because of Cantoni's position, he knew the adverse non-public information about the business of Coherent, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member (Chair) of the Governance and Nominating Committee and member of the Audit Committee, defendant Cantoni caused or allowed the dissemination of the improper public statements described herein. During the relevant period, Cantoni participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Cantoni violated Cal. Corp. Code §§25402 and 25502.5 by selling 25,000 Coherent shares for insider trading proceeds of $833,020.

24.    Defendant Sandeep Vij ("Vij") has been a director of Coherent since November 2004. Because of Vij's position, he knew the adverse non-public information about the business of Coherent, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. As a member of the Governance and

1  Nominating Committee, defendant Vij caused or allowed the dissemination of the improper public
2  statements described herein.

3      25.    Defendant John H. Hart ("Hart") has been a director of Coherent since March
4  2000. Because of Hart's position, he knew the adverse non-public information about the business
5  of Coherent, as well as its finances, markets and present and future business prospects, via access
6  to internal corporate documents, conversations and connections with other corporate officers and
7  employees, attendance at Board meetings and committees thereof and via reports and other
8  information provided to him in connection therewith. As a member (Chair) of the Compensation
9  Committee, defendant Hart controlled the other Defendants' stock option awards. As a member
10 of the Governance and Nominating Committee, defendant Hart caused or allowed the
11 dissemination of the improper public statements described herein.

12     26.    Defendant Lawrence Tomlinson ("Tomlinson") has been a director of Coherent
13 since July 2003. Because of Tomlinson's position, he knew the adverse non-public information
14 about the business of Coherent, as well as its finances, markets and present and future business
15 prospects, via access to internal corporate documents, conversations and connections with other
16 corporate officers and employees, attendance at Board meetings and committees thereof and via
17 reports and other information provided to him in connection therewith. As a member of the
18 Compensation Committee, defendant Tomlinson controlled the other Defendants' stock option
19 awards. As a member (Chair) of the Audit Committee, defendant Tomlinson caused or allowed
20 the dissemination of the improper public statements described herein. Based on his knowledge of
21 material non-public information regarding the Company, defendant Tomlinson violated Cal. Corp.
22 Code §§25402 and 25502.5 by selling 18,000 shares of Coherent stock for proceeds of $547,240
23 during the relevant period.

24     27.    Defendant Robert J. Quillinan ("Quillinan") has been a director of Coherent since
25 June 2001. Because of Quillinan's position, he knew the adverse non-public information about
26 the business of Coherent, as well as its finances, markets and present and future business
27 prospects, via access to internal corporate documents, conversations and connections with other
28 corporate officers and employees, attendance at Board meetings and committees thereof and via

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 9 -

1   reports and other information provided to him in connection therewith. Based on his knowledge

2   of material non-public information regarding the Company, defendant Quillinan sold 147,928

3   shares of Coherent stock for proceeds of more than $4.8 million during the relevant period.

4       28.    Defendant Garry W. Rogerson ("Rogerson") has been a director of Coherent since

5   2004. Because of Rogerson's position, he knew the adverse non-public information about the

6   business of Coherent, as well as its finances, markets and present and future business prospects,

7   via access to internal corporate documents, conversations and connections with other corporate

8   officers and employees, attendance at Board meetings and committees thereof and via reports and

9   other information provided to him in connection therewith. As a member of the Compensation

10  Committee, defendant Rogerson controlled the other Defendants' stock option awards. As a

11  member of the Audit Committee, defendant Rogerson caused or allowed the dissemination of the

12  improper public statements described herein.

13      29.    The defendants identified in ¶¶14-15 and 23-28 are referred to herein as the

14  "Director Defendants." The defendants identified in ¶¶14 and 16-22 are referred to herein as the

15  "Officer Defendants." The defendants identified in ¶¶14-19, 21, 23 and 26-27 are referred to

16  herein as the "Insider Selling Defendants."

17                     **DEFENDANTS' DUTIES**

18      30.    Each officer and director of Coherent named herein owed the Company and

19  Coherent shareholders the duty to exercise a high degree of care, loyalty and diligence in the

20  management and administration of the affairs of the Company, as well as in the use and

21  preservation of its property and assets. The conduct of Coherent's directors and officers

22  complained of herein involves knowing, intentional and culpable violations of their obligations as

23  officers and directors of Coherent. Further, the misconduct of Coherent's officers has been

24  ratified by Coherent's Board, which has failed to take any legal action on behalf of the Company

25  against them.

26      31.    By reason of their positions as officers, directors and fiduciaries of Coherent and

27  because of their ability to control the business and corporate affairs of the Company, the

28  Defendants owed Coherent and its shareholders fiduciary obligations of candor, trust, loyalty and

care, and were required to use their ability to control and manage Coherent in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Coherent and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control over Coherent to divert assets to themselves via improper and/or unlawful practices. Defendants also had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, earnings and compensation practices.

32. Because of their positions of control and authority as directors or officers of Coherent, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause Coherent to disseminate false Proxy Statements for 1996-2006, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Coherent, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Coherent shareholders and the financial markets but failed to do so.

33. Between 1996 and 2006, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was **not less than** the fair market value of Coherent stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date. However, Defendants concealed until 2006 that the stock option grants were repeatedly and consciously **backdated** to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period. Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options

granted to Defendants between 1996 and 2002 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

34.    To discharge their duties, the directors of Coherent were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Coherent.  By virtue of such duties, the officers and directors of Coherent were required, among other things, to:

(a)    manage, conduct, supervise and direct the business affairs of Coherent in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of Coherent);

(b)    neither engage in self-dealing nor knowingly permit any officer, director or employee of Coherent to engage in self-dealing;

(c)    neither violate nor knowingly permit any officer, director or employee of Coherent to violate applicable laws, rules and regulations;

(d)    remain informed as to the status of Coherent's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

(e)    prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f)    establish and maintain systematic and accurate records and reports of the business and affairs of Coherent and procedures for the reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

1        (g)     maintain and implement an adequate, functioning system of internal legal,

2  financial and accounting controls, such that Coherent's financial statements – including its

3  expenses, accounting for stock option grants and other financial information – would be accurate

4  and the actions of its directors would be in accordance with all applicable laws;

5        (h)     exercise control and supervision over the public statements to the securities

6  markets and trading in Coherent stock by the officers and employees of Coherent; and

7        (i)     supervise the preparation and filing of any financial reports or other

8  information required by law from Coherent and to examine and evaluate any reports of

9  examinations, audits or other financial information concerning the financial affairs of Coherent

10  and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the

11  subjects and duties set forth above.

12     35.    Each Defendant, by virtue of his or her position as a director and/or officer, owed

13  to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise

14  of due care and diligence in the management and administration of the affairs of the Company, as

15  well as in the use and preservation of its property and assets.  The conduct of the Defendants

16  complained of herein involves a knowing and culpable violation of their obligations as directors

17  and/or officers of Coherent, the absence of good faith on their part, and a reckless disregard for

18  their duties to the Company and its shareholders, which Defendants were aware or should have

19  been aware posed a risk of serious injury to the Company.  The conduct of the Defendants who

20  were also officers and/or directors of the Company during the relevant period has been ratified by

21  the Director Defendants who comprised Coherent's entire Board during the relevant period.

22     36.    Defendants breached their duties of loyalty and good faith by allowing or by

23  themselves causing the Company to misrepresent its financial results and prospects, as detailed

24  herein *infra*, and by failing to prevent the Defendants from taking such illegal actions.  In

25  addition, as a result of defendants' illegal actions and course of conduct during the relevant

26  period, the Company is now the subject of an SEC investigation.  As a result, Coherent has

27  expended and will continue to expend significant sums of money.  Such expenditures include, but

28  are not limited to:

1          (a)     improvidently paid executive compensation;

2          (b)     increased capital costs as a result of the loss of market capitalization and the

3  Company's damaged reputation in the investment community;

4          (c)     professional costs associated with the SEC inquiry;

5          (d)     costs incurred to carry out internal investigations, including legal fees paid

6  to outside counsel; and

7          (e)     incurring possible IRS penalties for improperly reporting compensation.

8       37.    These actions have irreparably damaged Coherent's corporate image and goodwill.

9  For at least the foreseeable future, Coherent will suffer from what is known as the "liar's

10  discount," a term applied to the stocks of companies who have been implicated in illegal behavior

11  and have misled the investing public, such that Coherent's ability to raise equity capital or debt on

12  favorable terms in the future is now impaired.

13            **AIDING AND ABETTING AND CONCERTED ACTION**

14       38.    In committing the wrongful acts alleged herein, Defendants have pursued or joined

15  in the pursuit of a common course of conduct, and have acted in concert with one another in

16  furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as

17  giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in

18  breach of their respective duties.

19       39.    At relevant times, Defendants collectively and individually initiated a course of

20  conduct which was designed to and did: (i) conceal the fact that the Company was over-paying its

21  directors, officers and employees and improperly misrepresenting its financial results, in order to

22  allow Defendants to artificially inflate the price of the Company's shares; (ii) maintain

23  Defendants' executive and directorial positions at Coherent and the profits, power and prestige

24  which Defendants enjoyed as a result of these positions; (iii) deceive the investing public,

25  including shareholders of Coherent, regarding Defendants' management of Coherent's operations,

26  the Company's financial health and stability, and future business prospects, which had been

27  misrepresented by Defendants throughout the relevant period; and (iv) allow several of the

28  Company's officers and directors to sell millions of dollars worth of Company stock at inflated

1    prices.  In furtherance of this course of conduct, Defendants collectively and individually took the

2    actions set forth herein.

3         40.    Defendants engaged in a common course of conduct commencing by at least 1996

4    and continuing thereafter.  During this time, Defendants caused the Company to conceal the true

5    fact that Coherent was over-compensating its directors, officers and employees and

6    misrepresenting its financial results.  In addition, Defendants also made other specific, false

7    statements about Coherent's financial performance and future business prospects, as alleged

8    herein.

9         41.    The purpose and effect of Defendants' common enterprise and/or common course

10   of conduct was, among other things, to disguise Defendants' violations of law, breaches of

11   fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust

12   enrichment; to conceal adverse information concerning the Company's operations, financial

13   condition, and future business prospects; and to artificially inflate the price of Coherent common

14   stock so they could: (i) dispose of millions of dollars of their own stock, and (ii) protect and

15   enhance their executive and directorial positions and the substantial compensation and prestige

16   they obtained as a result thereof.

17        42.    Defendants accomplished their common enterprise and/or common course of

18   conduct by causing the Company to purposefully, recklessly or negligently grant under-priced

19   stock options and to misrepresent its financial results.  Because the actions described herein

20   occurred under the authority of the Board of Directors, each of the Defendants was a direct,

21   necessary, and substantial participant in the common enterprise and/or common course of conduct

22   complained of herein.

23        43.    Each of the Defendants aided and abetted and rendered substantial  assistance in

24   the wrongs complained of herein.  In taking such actions to substantially assist the commission of

25   the wrongdoing complained of herein, each of the Defendants acted with knowledge of the

26   primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was

27   aware of his or her overall contribution to and furtherance of the wrongdoing.

28

# BACKGROUND

44.     Coherent is a supplier of photonics-based solutions in a broad range of commercial and scientific research applications.  The Company designs, manufactures and markets lasers, precision optics and related accessories for a diverse group of customers.  The Company has two operating segments, Electro-Optics and Lambda Physik, which work with customers to provide photonics-based solutions.   The Electro-Optics segment focuses on markets, such as semiconductor and related manufacturing, graphic arts and display, materials processing, original equipment manufacturer laser components and instrumentation, and scientific research and government programs.

45.     Throughout the relevant period, Defendants caused Coherent to grant them millions of stock options permitting them to buy Coherent stock for pennies on the dollar which they could in turn sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock at a certain price in the future.  Typically, companies set that price at the same time their directors approve an option grant, with an exercise price – also known as the "strike price" – usually set at the closing price of the stock that day, the closing price of the night before or by computing an average of the high and low prices on the day of the vote.

46.     However, many of the millions of options granted to Coherent's executives had a hidden, valuable component:  they were misdated, often making them even more significantly valuable.  The misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii) "wait and see" grants, in which a grant date was selected, but the decision was finalized – and sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but there is a period after January 15 in which the grantor waits to see if a more advantageous price occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees, and although the work is not complete on those grants as of the stated grant date, that date is nonetheless used).

## STOCK OPTION GRANTS

47.     Certain of Coherent's option grants with highly suspicious grant dates are described below (unadjusted for subsequent stock split):

**Fiscal 1996[1] Option Grants**

48.     Defendants dated most of Coherent's fiscal 1996 option grants to top executives as of April 8, 1996, when the price was $40.125 per share – the low of the month.  Within two weeks of the grant, the stock closed at $50.50 per share and reached $53.62 per share by month end. Defendants Couillaud, Quillinan and Miller received 6,000, 6,000 and 2,500 options, respectively, at this $40.125 exercise price.

**Fiscal 1997 Option Grants**

49.     Defendants dated most of Coherent's fiscal 1997 option grants to top executives as of April 28, 1997, when the price was $39.25 per share – nearly the low of the month ($38.88). The very next day, the stock closed at $41.13 per share and within a week was above $45.00 per share.  Defendants Couillaud, Quillinan, Ambroseo and Miller received 12,000, 7,000, 2,000 and 3,500 options, respectively, at the $39.25 per share exercise price.

**Fiscal 1998 Option Grants**

50.     Defendants dated all of Coherent's fiscal 1998 option grants to top executives as of August 31, 1998, when the price was $8.94 per share – the low of the month.  One day after and one day before this grant date the stock traded at $10.00 per share.  Defendants Couillaud, Quillinan, Ambroseo and Fossati-Bellani received 138,000, 34,000, 36,000 and 24,000 options, respectively, at this $8.94 exercise price.

**Fiscal 1999 Option Grants**

51.     Defendants dated all of Coherent's fiscal 1999 option grants to top executives as of June 14, 1999, when the price was $15.875 per share – near the low of the month ($15.25 per share).  The stock traded as high as $18.94 per share in June 1999.  Defendants Couillaud,

---

[1]     Coherent's fiscal year ends the Saturday closest to October 1st.

1  Quillinan, Ambroseo, Fossati-Bellani and Miller received 60,000, 22,000, 30,000, 18,000 and

2  8,000 options, respectively, at this $15.875 exercise price.

3  **Fiscal 2000 Option Grants**

4        52.      Defendants dated all Coherent's fiscal 2000 option grants to top executives as of

5  February 1, 2000, when the price was $49.875 per share – the low of the month.  The stock

6  reached $54.00 per share within two days and reached $106.00 per share by the end of the month.

7  Defendants Couillaud, Quillinan, Ambroseo and Fossati-Bellani received 110,000, 36,000, 58,000

8  and 41,000 options, respectively, at this $49.875 exercise price.

9  **Fiscal 2001 Option Grants**

10        53.      Defendants dated most of Coherent's fiscal 2001 option grants to top executives as

11  of April 3, 2001, when the price was $32.50 per share – the low of the month.  The stock traded as

12  high as $45.50 per share in April 2001.  Defendants Couillaud, Ambroseo, Quillinan and Fossati-

13  Bellani received 200,000, 100,000, 70,000 and 75,000 options, respectively, at the $32.50 exercise

14  price.

15        54.      Below are several of Coherent's grants which occurred right before significant

16  stock price increases (adjusted for subsequent stock split):

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28











Coherent
January 3, 2000 - March 1, 2000



Coherent
February 26, 2001 - May 3, 2001

55.     Complicating matters and magnifying the harm to Coherent, during the relevant period, Coherent's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

56.     Specifically, in many instances the reported dates Coherent stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. In almost every case of misdating, the price of Coherent shares on the reported option-grant date was lower than the share price on the actual day the options were issued.

57.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Coherent a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Coherent faced because of its deficient internal controls. Furthermore, defendants Cantoni, Rogerson and Tomlinson, as members of the Audit Committee during the relevant period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants Ambroseo, Simonet, Spinelli, Fossati-Bellani, Victor, Meissner, Bucek and Miller, as officers of

1    Coherent during the relevant period, had ample opportunity to discuss this material information

2    with their fellow officers at management meetings and via internal corporate documents and

3    reports.   Moreover, the Director Defendants had ample opportunity to discuss this material

4    information with fellow directors at any of the scores of Board meetings that occurred during the

5    relevant period as well as at committee meetings of the Board.  Despite these duties, Defendants

6    negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the

7    misleading statements to be disseminated by Coherent to the investing public and the Company's

8    shareholders during the relevant period.

9          58.     Specifically, since 1996 Defendants caused Coherent to report false and misleading

10   financial results which materially understated its compensation expenses and thus overstated its

11   earnings as follows:

| Fiscal Year | Reported Earnings (Loss) (in millions) | Reported Diluted EPS (Loss) from Continuing Operations |
|---|---|---|
| 1996 | $30.31 | $1.32 |
| 1997 | $26.29 | $1.41 |
| 1998 | $18.81 | $0.68 |
| 1999 | $11.84 | $0.92 |
| 2000 | $69.94 | $1.01 |
| 2001 | $100.75 | $1.21 |
| 2002 | $(68.97) | $0.33 |
| 2003 | $(45.89) | $(0.14) |
| 2004 | $17.72 | $0.49 |
| 2005 | $39.86 | $1.17 |

19        59.     Meanwhile, Defendants were causing the Company to grant them millions of stock

20   options, many of which were misdated. In fact, non-employee members of the Coherent's Board

21   of Directors received most of their compensation for serving as Board members in the form of

22   stock options.  In total, during the relevant period Defendants caused the Company to grant them

23   millions of stock options, many of which, the evidence will show, were misdated.

24        60.     Moreover, throughout the relevant period certain Defendants exercised many of

25   these stock options contributing to their ability to sell over $23.2 million worth of Coherent stock

26   they obtained – often by cashing in under-priced stock options:

27

28

| INSIDER | DATES | SHARES | PROCEEDS |
|---------|-------|--------|----------|
| AMBROSEO | 04/24/98-02/04/05 | 58,770 | $2,182,517 |
| COUILLAUD | 02/01/96-07/31/03 | 297,100 | $7,457,953 |
| SIMONET | 05/06/05-04/27/06 | 35,000 | $1,214,000 |
| SPINELLI | 11/29/04-05/11/06 | 9,656 | $329,221 |
| FOSSATI-BELLANI | 02/15/00-11/12/04 | 71,810 | $2,623,460 |
| VICTOR | 08/12/03-02/02/05 | 27,000 | $738,890 |
| MILLER | 02/05/96-08/29/06 | 55,600 | $2,459,560 |
| CANTONI | 11/10/99-11/30/05 | 25,000 | $833,020 |
| TOMLINSON | 11/30/04-11/25/05 | 18,000 | $547,240 |
| QUILLINAN | 07/30/97-05/02/06 | 147,928 | $4,838,277 |
| TOTAL | | 745,864 | $23,224,138 |

61.     On November 1, 2006, Coherent announced that it had initiated an internal investigation into the Company's historical stock option practices and related accounting. Then, on December 14, 2006, the Company announced it had received an informal inquiry from the SEC relating to its past option grants and practices.

62.     In effect, during the relevant period, the Defendants caused Coherent's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Coherent to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Coherent's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

63.     Plaintiff brings this action derivatively in the right and for the benefit of Coherent to redress injuries suffered and to be suffered by Coherent as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting

1   thereof, by the Defendants.  This is not a collusive action to confer jurisdiction on this Court

2   which it would not otherwise have.

3        64.    Plaintiff will adequately and fairly represent the interests of Coherent and its

4   shareholders in enforcing and prosecuting its rights.

5        65.    Plaintiff is an owner of Coherent stock and was an owner of Coherent stock during

6   times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

7        66.    Based upon the facts set forth throughout this Complaint, a pre-filing demand upon

8   the Coherent Board of Directors to institute this action against the officers and members of the

9   Coherent Board of Directors is excused as futile.  A pre-filing demand would be a useless and

10  futile act because:

11        (a)    The members of Coherent's Board have demonstrated their unwillingness

12  and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves

13  and/or their fellow directors and allies in the top ranks of the corporation for the violations of law

14  complained of herein.  These are people they have developed professional relationships with, who

15  are their friends and with whom they have entangling financial alliances, interests and

16  dependencies, and therefore, they are not able to and will not vigorously prosecute any such

17  action.

18        (b)    The Coherent Board of Directors and senior management participated in,

19  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

20  to conceal or disguise those wrongs from Coherent's stockholders or recklessly and/or

21  consciously negligently disregarded the wrongs complained of herein, and are therefore not

22  disinterested parties.  As a result of their access to and review of internal corporate documents,

23  conversations and connections with other corporate officers, employees, and directors, and

24  attendance at management and/or Board meetings, each of the Defendants knew the adverse non-

25  public information regarding the improper stock option grants and financial reporting.  Pursuant to

26  their specific duties as Board members, Defendants are charged with the management of the

27  Company and to conduct its business affairs.  Defendants breached the fiduciary duties that they

28  owed to Coherent in that they failed to prevent and correct the improper stock option granting and

1   financial reporting.  Certain directors are also dominated and controlled by other Defendants and

2   cannot act independently of them.   Thus, the Coherent Board cannot exercise independent

3   objective judgment in deciding whether to bring this action or whether to vigorously prosecute

4   this action because each of its members participated personally in the wrongdoing or are

5   dependent upon other Defendants who did.

6           (c)     The acts complained of constitute violations of the fiduciary duties owed by

7   Coherent's officers and directors and these acts are incapable of ratification.

8           (d)     The members of Coherent's Board have benefited, and will continue to

9   benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their

10  positions of control and the perquisites derived thereof, and are incapable of exercising

11  independent objective judgment in deciding whether to bring this action.

12          (e)     Any suit by the current directors of Coherent to remedy these wrongs

13  would likely further expose the liability of Defendants under the federal securities laws, which

14  could result in civil and/or criminal actions being filed against one or more of the Defendants,

15  thus, they are hopelessly conflicted in making any supposedly independent determination on

16  whether to sue themselves.

17          (f)     Coherent has been and will continue to be exposed to significant losses due

18  to the wrongdoing complained of herein, yet Coherent's Board has not filed any lawsuits against

19  Defendants or others who were responsible for that wrongful conduct to attempt to recover for

20  Coherent any part of the damages Coherent suffered and will suffer thereby.

21          (g)     In order to properly prosecute this lawsuit, Coherent's directors would have

22  to sue themselves and the other Defendants, requiring them to expose themselves and their

23  comrades to millions of dollars in civil liability and/or sanctions.  This they will not do.

24          (h)     Coherent's current and past officers and directors are protected against

25  personal liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in

26  this Complaint by directors' and officers' liability insurance which they caused the Company to

27  purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of

28  Coherent.  However, due to certain changes in the language of directors' and officers' liability

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 26 -

1   insurance policies in the past few years, the directors' and officers' liability insurance policies

2   covering the Defendants in this case contain provisions which eliminate coverage for any action

3   brought directly by Coherent against these Defendants, known as, *inter alia*, the "insured versus

4   insured exclusion." As a result, if these directors were to sue themselves or certain of the officers

5   of Coherent, there would be no directors' and officers' insurance protection and thus, this is a

6   further reason why they will not bring such a suit. On the other hand, if the suit is brought

7   derivatively, as this action is brought, such insurance coverage exists and will provide a basis for

8   the Company to effectuate a recovery.

9       (i)     To bring this action for breaching their fiduciary duties, the members of the

10  Coherent Board would have been required to sue themselves and/or their fellow directors and

11  allies in the top ranks of the Company, who are their personal friends and with whom they have

12  entangling financial alliances, interests and dependencies, which they would not do.

13      67.    Plaintiff has not made any demand on shareholders of Coherent to institute this

14  action since such demand would be a futile and useless act for the following reasons:

15      (a)     Coherent is a publicly traded company with approximately 31 million

16  shares outstanding, and thousands of shareholders;

17      (b)     Making demand on such a number of shareholders would be impossible for

18  plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders;

19  and

20      (c)     Making demand on all shareholders would force plaintiff to incur huge

21  expenses, assuming all shareholders could be individually identified.

### THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON COHERENT'S FINANCIAL STATEMENTS

**The Fiscal 1996 Form 10-K**

22

23

24      68.    On or about December 23, 1996, the Company filed its fiscal 1996 Form 10-K with

25  the SEC. The fiscal 1996 Form 10-K was simultaneously distributed to shareholders and the

26  public. The fiscal 1996 Form 10-K included Coherent's fiscal 1996 financial statements which

27  were materially false and misleading and presented in violation of GAAP, due to its improper

28

1  accounting for the backdated stock options.  As a result, Coherent's compensation expense was

2  understated and its net earnings were overstated.

3  **The Fiscal 1997 Form 10-K405**

4         69.     On or about December 18, 1997, the Company filed its fiscal 1997 Form 10-K405

5  with the SEC.  The fiscal 1997 Form 10-K405 was simultaneously distributed to shareholders and

6  the public.  The fiscal 1997 Form 10-K405 included Coherent's fiscal 1997 financial statements

7  which were materially false and misleading and presented in violation of GAAP, due to improper

8  accounting for the backdated stock options.  As a result, Coherent's compensation expense was

9  understated and its net earnings were overstated.

10  **The Fiscal 1998 Form 10-K405**

11        70.     On or about December 16, 1998, the Company filed its fiscal 1998 Form 10-K405

12  with the SEC.  The fiscal 1998 Form 10-K405 was simultaneously distributed to shareholders and

13  the public.  The fiscal 1998 Form 10-K405 included Coherent's fiscal 1998 financial statements

14  which were materially false and misleading and presented in violation of GAAP, due to improper

15  accounting for the backdated stock options.  As a result, Coherent's compensation expense was

16  understated and its net earnings were overstated.

17  **The Fiscal 1999 Form 10-K405**

18        71.     On or about December 15, 1999, the Company filed its fiscal 1999 Form 10-K405

19  with the SEC.  The fiscal 1999 Form 10-K405 was simultaneously distributed to shareholders and

20  the public.  The fiscal 1999 Form 10-K405 included Coherent's fiscal 1999 financial statements

21  which were materially false and misleading and presented in violation of GAAP, due to improper

22  accounting for the backdated stock options.  As a result, Coherent's compensation expense was

23  understated and its net earnings were overstated.

24  **The Fiscal 2000 Form 10-K405**

25        72.     On or about December 14, 2000, the Company filed its fiscal 2000 Form 10-K405

26  with the SEC.  The fiscal 2000 Form 10-K405 was simultaneously distributed to shareholders and

27  the public.  The fiscal 2000 Form 10-K405 included Coherent's fiscal 2000 financial statements

28  which were materially false and misleading and presented in violation of GAAP, due to improper

1   accounting for the backdated stock options.  As a result, Coherent's compensation expense was

2   understated and its net earnings were overstated.

3   **The Fiscal 2001 Form 10-K405**

4        73.    On or about December 18, 2001, the Company filed its fiscal 2001 Form 10-K405

5   with the SEC.  The fiscal 2001 Form 10-K405 was simultaneously distributed to shareholders and

6   the public.  The fiscal 2001 Form 10-K405 included Coherent's fiscal 2001 financial statements

7   which were materially false and misleading and presented in violation of GAAP, due to its

8   improper accounting for the backdated stock options.  As a result, Coherent's compensation

9   expense was understated and its net earnings were overstated.

10   **The Fiscal 2002 Form 10-K**

11        74.    On or about December 18, 2002, the Company filed its fiscal 2002 Form 10-K with

12   the SEC.  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the

13   public.  The fiscal 2002 Form 10-K included Coherent's fiscal 2002 financial statements which

14   were materially false and misleading and presented in violation of GAAP, due to its improper

15   accounting for the backdated stock options.  As a result, Coherent's compensation expense was

16   understated and its net earnings were overstated.

17   **The Fiscal 2003 Form 10-K**

18        75.    On or about December 18, 2003, the Company filed its fiscal 2003 Form 10-K with

19   the SEC.  The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the

20   public.  The fiscal 2003 Form 10-K included Coherent's fiscal 2003 financial statements which

21   were materially false and misleading and presented in violation of GAAP, due to improper

22   accounting for the backdated stock options.  As a result, Coherent's compensation expense was

23   understated and its net earnings were overstated.

24   **The Fiscal 2004 Form 10-K**

25        76.    On or about December 15, 2004, the Company filed its fiscal 2004 Form 10-K with

26   the SEC.  The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the

27   public.  The fiscal 2004 Form 10-K included Coherent's fiscal 2004 financial statements which

28   were materially false and misleading and presented in violation of GAAP, due to improper

1  accounting for the backdated stock options.  As a result, Coherent's compensation expense was

2  understated and its net earnings were overstated.

3  **The Fiscal 2005 Form 10-K**

4  77.    On or about December 15, 2006, the Company filed its fiscal 2005 Form 10-K with

5  the SEC.  The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the

6  public.  The fiscal 2005 Form 10-K included Coherent's fiscal 2005 financial statements which

7  were materially false and misleading and presented in violation of GAAP, due to its improper

8  accounting for the backdated stock options.  As a result, Coherent's compensation expense was

9  understated and its net earnings were overstated.

10  **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

11  78.    The 1996-2006 Proxy Statements concealed Defendants' option backdating

12  scheme.  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when

13  voting on proxy proposals between 1996 and 2006.

14  79.    On November 1, 2006, Coherent filed a Form 8-K with the SEC announcing the

15  Company had initiated an internal review of its historical stock option practices and related

16  accounting.  Then, on December 14, 2006, Coherent announced that it had received an informal

17  inquiry from the SEC on its past option grants and practices.

18  80.    Each dollar diverted to Defendants via the option backdating scheme has come at

19  the expense of the Company.  For example, if Couillaud's 200,000 options granted in 2001 had

20  not been manipulated, but rather had a strike price of $40, instead of the $32.50 strike price, when

21  Couillaud exercised those options the Company would receive $8.0 million instead of $6.5 million

22  – *a cost to the Company of $1.5 million for this single instance of option backdating*.

23  **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

24  81.    Unlike most companies which avoid such option backdating abuse by issuing stock

25  option grants at the same time each year, which eliminates the potential for backdating,

26  Defendants ensured that executives would not have any such restrictions.  Given the many times

27  Coherent's grants were the low of the month in which options were granted, the date of their stock

28  option grants was clearly more than merely coincidental.

82.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Coherent, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

### TOLLING OF THE STATUTE OF LIMITATIONS

83.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Coherent's public investors that Coherent's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

84.     Coherent's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until November 1, 2006, when Coherent announced an internal review of its historical stock option practices and related accounting.  Then, on December 14, 2006, Coherent announced that it had received an informal inquiry from the SEC on its past option grants and practices.

85.     Finally, as fiduciaries of Coherent and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Coherent's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Coherent Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §14(a) of the Exchange Act Against
### All Defendants

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

88.     The 1996-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Coherent to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1996.

89.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

90.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

91.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Accounting

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

93. At all relevant times, Defendants, as directors and/or officers of Coherent, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

94. In breach of their fiduciary duties owed to Coherent and its shareholders, the Defendants caused Coherent, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Coherent. By this wrongdoing, the Defendants breached their fiduciary duties owed to Coherent and its shareholders.

95. The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

96. As a result of Defendants' misconduct, Coherent has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

97. Plaintiff demands an accounting be made of all stock option grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other exercise of backdated stock option grants received by the Defendants.

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

98. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99. Defendants agreed to and did participate with defendants Ambroseo, Couillaud and Quillinan and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties the Defendants owed to the Company.

100. The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Coherent and its public shareholders, have engaged in unlawful self-

1   dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the

2   interests of Coherent and its shareholders.

3        101.   As demonstrated by the allegations above, Defendants failed to exercise the care

4   required, and breached their duties of loyalty, good faith, candor and independence owed to

5   Coherent and its public shareholders, and they failed to disclose material information and/or made

6   material misrepresentations to shareholders regarding Defendants' option backdating scheme.

7        102.   By reason of the foregoing acts, practices and course of conduct, the Defendants

8   have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations

9   toward Coherent and its public shareholders.

10       103.   As a proximate result of Defendants' conduct, in concert with Ambroseo,

11  Couillaud and Quillinan, Coherent has been injured and is entitled to damages.

**COUNT IV**

**Abuse of Control Against All Defendants**

14       104.   Plaintiff incorporates by reference and realleges each and every allegation set forth

15  above, as though fully set forth herein.

16       105.   The Defendants employed the alleged scheme for the purpose of maintaining and

17  entrenching themselves in their positions of power, prestige and profit at, and control over,

18  Coherent, and to continue to receive the substantial benefits, salaries and emoluments associated

19  with their positions at Coherent.  As a part of this scheme, Defendants actively made and/or

20  participated in the making of, or aided and abetted the making of, misrepresentations regarding

21  Coherent.

22       106.   Defendants' conduct constituted an abuse of their ability to control and influence

23  Coherent.

24       107.   By reason of the foregoing, Coherent has been damaged.

**COUNT V**

**Gross Mismanagement Against All Defendants**

27       108.   Plaintiff incorporates by reference and realleges each and every allegation set forth

28  above, as though fully set forth herein.

109.    Defendants had a duty to Coherent and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Coherent.

110.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Coherent in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Coherent's affairs and in the use and preservation of Coherent's assets.

111.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Coherent to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Coherent, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Coherent.

112.    By reason of the foregoing, Coherent has been damaged.

## COUNT VI

### Constructive Fraud Against All Defendants

113.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

114.    As corporate fiduciaries, Defendants owed to Coherent and its shareholders a duty of candor and full accurate disclosure regarding the true state of Coherent's business and assets and their conduct with regard thereto.

115.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Coherent's shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Coherent.  Thus they have committed constructive fraud and violated their duty of candor.

116.    By reason of the foregoing, Coherent has been damaged.

## COUNT VII

### Corporate Waste Against All Defendants

117.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

118.   By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, by giving away millions of dollars to Defendants via the option backdating scheme, Defendants have caused Coherent to waste valuable corporate assets.

119.   As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT VIII

### Unjust Enrichment Against All Defendants

120.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

121.   As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of Coherent, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office.

122.   All the payments and benefits provided to the Defendants were at the expense of Coherent.  The Company received no benefit from these payments.  Coherent was damaged by such payments.

123.   Certain of the Defendants sold Coherent stock for a profit during the period of deception, misusing confidential non-public corporate information.  These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Coherent.  A constructive trust for the benefit of the Company should be imposed thereon.

## COUNT IX

### Against the Officer Defendants for Rescission

124.   Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

125.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Coherent entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Coherent shareholders and filed with the SEC.

126.    All contracts which provide for stock option grants between the Officer Defendants and Coherent and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

127.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

128.    At the time that the Insider Selling Defendants sold their Coherent common stock as set forth herein at ¶60, by reason of their high executive and/or directorial positions with Coherent, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of Coherent's improper accounting.

129.    At the time of such sales, that information was not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Coherent shares at that time.

130.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their Coherent common stock in California in violation of California Corporations Code §25402.

131.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Coherent for damages in an amount up to three times

the difference between the price at which Coherent common stock was sold by these Defendants, and each of them, and the market value which that Coherent common stock would have had at the time of the sale if the information known to these Defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XI

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

132.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

133.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Coherent common stock on the basis of such information.

134.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Coherent common stock.

135.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Coherent common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

136.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.    Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.    Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.    Directing Coherent to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)    a proposal requiring that the office of CEO of Coherent and Chairman of the Coherent Board of Directors be permanently held by separate individuals and that the Chairman of the Coherent Board meets rigorous "independent" standards;

(ii)    a proposal to strengthen the Coherent Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)    appropriately test and then strengthen the internal audit and control functions;

(iv)    rotate independent auditing firms every five years;

(v)    control and limit insider stock selling and the terms and timing of stock option grants; and

(vi)    reform executive compensation.

D.    Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

E.    Awarding punitive damages;

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 39 -

1    F.    As to all improperly dated and/or improperly priced options that have been

2 exercised, ordering Defendants to make a payment to the Company in an amount equal to the

3 difference between the prices at which the options were exercised and the exercise prices the

4 options should have carried if they were priced at fair market value on the actual date of grant;

5    G.    As to all improperly dated and/or improperly priced options that have been granted

6 but not yet exercised or expired, ordering the Company to rescind such options so they carry the

7 exercise prices they should have carried if they were priced at fair market value on the actual date

8 of grant;

9    H.    Awarding costs and disbursements of this action, including reasonable attorneys',

10 accountants', and experts' fees; and

11    I.    Granting such other and further relief as this Court may deem just and proper.

12                              **JURY DEMAND**

13    Plaintiff demands a trial by jury.

14 DATED: February 15, 2007              LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
15                                        SHAWN A. WILLIAMS

16

17                                        _____
                                          SHAWN A. WILLIAMS
18

19                                        100 Pine Street, Suite 2600
                                          San Francisco, CA  94111
20                                        Telephone:  415/288-4545
                                          415/288-4534 (fax)

21                                        LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
22                                        WILLIAM S. LERACH
                                          DARREN J. ROBBINS
23                                        TRAVIS E. DOWNS III
                                          655 West Broadway, Suite 1900
24                                        San Diego, CA 92101
                                          Telephone:  619/231-1058
25                                        619/231-7423 (fax)

26                                        Attorneys for Plaintiff

27 S:\CptDraft\Derivative\Cpt Coherent Derv.doc

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 40 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3     named parties, there is no such interest to report.

4

5     _____

6     ATTORNEY OF RECORD FOR PLAINTIFF
      JAMES M. LEE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COHERENT INC. VERIFICATION

I, James M. Lee, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _8-10-07_

SIGNATURE